Not for Publication

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                    )
IN RE:                              )    CASE NO.       05-36352 (LMW)
                                    )
   KIMBERLY McAVOY,                 )    CHAPTER        7
                                    )
           DEBTOR.                  )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                    )
   RICHARD M. COAN, TRUSTEE,        )    ADV. PRO NO.   07-3070 (LMW)
                                    )
           PLAINTIFF                )    DOC. I.D. NO.  1
                                    )
   vs.                              )
                                    )
   KIMBERLY McAVOY,                 )
                                    )
           DEFENDANT.               )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
```

### APPEARANCES

| | |
|---|---|
| Timothy D. Miltenberger, Esq.<br>Coan Lewendon Gulliver<br>  & Miltenberger<br>495 Orange Street<br>New Haven, CT 06511 | Attorney for Plaintiff/Trustee |
| Joel M. Grafstein, Esq.<br>Grafstein & Associates<br>10 Melrose Drive<br>Farmington, CT 06032 | Attorney for Defendant/Debtor |

### PARTIAL RULING AND ORDER REOPENING PROCEEDINGS

Lorraine Murphy Weil, United States Bankruptcy Judge

In this adversary proceeding, the chapter 7 trustee (the "Trustee") seeks a declaration that the above-referenced debtor's (the "Debtor") prepetition residence (the "Property"), title to which was solely in the Debtor's (then) spouse's name as of the petition date but was assigned to the Debtor pursuant to a postpetition dissolution decree, is property of the estate pursuant to 11 U.S.C. §§ 541(a)(1) and 541(a)(6). The court has jurisdiction over this adversary proceeding as a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and that certain Order dated September 21, 1984 of this District (Daly, C.J.).[1]

## I. BACKGROUND

### A. The Chapter 7 Case

The Debtor commenced this chapter 7 case by a petition filed on October 13, 2005. Simultaneously with the filing of her petition, the Debtor filed a set of sworn schedules. (*See* Case Doc. I.D. No. 1, the "Schedules.")[2] Among other things, the Schedules aver the following as to the Debtor: as of the filing of the petition (a) there were no real property assets; (b) there were personal property assets in the aggregate stated value of $15,358.00; (c) there was a claim (secured by the Debtor's automobile) in the stated amount of $13,441.22; (d) there were no priority unsecured claims; (e) there were general unsecured claims in the aggregate stated amount of $41,015.20; (f) the Debtor had current income in the amount of $2,520.00 per month and (g) the Debtor had current

---

[1] That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceeding arising under Title 11, U.S.C., or arising in . . . a case under Title 11, U.S.C. . . . ." References herein to title 11 of the United States Code or to the Bankruptcy Code are references to the same as they appeared prior to the effective date of their amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

[2] References herein to the docket of this chapter 7 case appear in the following form: "Case Doc. I.D. No. __." References herein to the docket of this adversary proceeding appear in the following form: "A.P. Doc. I.D. No. ___."

expenses in the amount of $2,969.14 per month. In her Schedule C (Property Claimed as Exempt), the Debtor asserts exemptions pursuant to Bankruptcy Code § 522(b)(1) (the so called "Federal List" which is available in Connecticut). As of the petition date, the Debtor was married with two minor children (a seventeen year old son and a twelve year old daughter). (*See* Case Doc. I.D. No. 1 (Schedule I).) The Debtor's Statement of Financial Affairs discloses the pendency of a dissolution proceeding (as to which she was the defendant) in the Connecticut Superior Court. (*See* Case Doc. I.D. No. 1 (Statement of Financial Affairs, item 4).)

The meeting of creditors (the "Meeting") provided for by Bankruptcy Code § 341 was held on November 7, 2005 where the Debtor was examined under oath by the Trustee.[3] The Debtor was granted a chapter 7 discharge by order dated January 9, 2006. (*See* Case Doc. I.D. No. 8.) In March, 2007, the Trustee applied to retain special counsel "to institute and litigate a declaratory judgment action to establish that . . . [the Property] is property of the bankruptcy estate so that the Trustee may sell said property for the benefit of the creditors." (Case Doc. I.D. No. 11 ¶ 2.) That application was granted by order dated March 13, 2007. (*See* Case Doc. I.D. No. 14.) On June 16, 2007, the Trustee filed a Report of Assets (*see* Case Doc. I.D. No. 16) and creditors were notified that the last date for filing proofs of claim was September 18, 2007 (*see* Case Doc. I.D. No. 17). To date, proofs of claim in the aggregate stated amount of $28,942.80 have been filed (including one late-filed claim in the amount of $4,720.48). (*See* Claims Register.)

### B.   Adversary Proceeding

The above-referenced adversary proceeding was commenced by the filing of a complaint (A.P. Doc. I.D. No. 1, the "Complaint") on July 3, 2007. The Complaint alleges in relevant part:

---

[3]   The Meeting will be discussed further in the "Facts" section below.

    2.      Upon information and belief, the [Debtor] . . . claims a right to a portion of, or interest in a portion of . . . [the Property]. The [Debtor's] . . . claim is based on her ownership of . . . [the Property] prior to her divorce from Kenneth McAvoy.

. . .

    8.      By way of a complaint returnable on August 30, 2005, Kenneth McAvoy [the Debtor's now former spouse] commenced a civil action [the "Dissolution Proceeding"] in the Superior Court for the State of Connecticut to dissolve his marriage with the Debtor, determine custody of his minor children, and to divide the property of his marital estate with the Debtor.

    9.      On October 13, 2005 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 7 of the United States Bankruptcy Code.

    10.      On the Petition Date, the Debtor owned an equitable interest in . . . [the Property] and all of the other property that comprised the marital estate of the Debtor and Kenneth McAvoy.

    11.      On or about June 1, 2006, the Superior Court dissolved the marriage of the Debtor and Kenneth McAvoy, and approved the parties' Agreement and Stipulation of Judgment (the "Separation Agreement").

    12.      Pursuant to the Separation Agreement, *inter alia*, the Debtor received the full undivided fee simple interest in . . . [the Property] and the Debtor waived any and all rights she had or may have had in any business in which Kenneth McAvoy had an interest.

. . .

    17.      The Trustee is entitled to a judgment against the . . . [Debtor] declaring that . . . [the Property] is property of bankruptcy estate of . . . [the Debtor] and that the . . . [Debtor] has no ownership interest in . . . [the Property] for any reason whatsoever . . . .

(A.P. Doc. I.D. No. 1.) In his initial post-trial brief, the Trustee clarifies that his position is based on Bankruptcy Code §§ 541(a)(1) and 541(a)(6). (*See* A.P. Doc. I.D. No. 42 at 5 ("[T]he . . . [Property] is property of the estate pursuant to § 541(a)(1) and (6) . . . .").)

    On August 13, 2007, the Debtor filed her answer (A.P. Doc. I.D. No. 10, the "Answer") to the Complaint. The Answer admits the allegations of paragraphs 2, 8, 9, 10, 11 and 12 (among other

paragraphs) of the Complaint. (*See id.*)[4]  The Answer also alleges an "Affirmative Defense" as follows: "The transfer of the Debtor's former-husband's interest in . . . [the Property] was by way of [a]limony and for the support [of] his our [sic] minor children." (*Id.* at 2.)[5]

The Complaint and Answer come on for trial (the "Trial") on September 15, 2008.[6]  At the Trial, the Trustee introduced documentary evidence[7] and testified himself.  The Debtor introduced no admissible evidence.  At the conclusion of the Trial, the court ordered post-trial briefing.  After that briefing was complete, by order dated December 12, 2008, the court ordered further briefing on the following issues:

> 1. As a matter of law (and notwithstanding the Judicial Admissions),[8] did Section 46b-81(a) of the Connecticut General Statutes (or any other applicable provision of Connecticut Law) create any contingent or vested interest (legal or equitable) for the . . . [Debtor's ] benefit in . . . [the Property] prior to the Petition Date? *Cf. Musso v. Ostashko,* 468 F.3d 99, 105 (2d Cir. 2006) ("At no point prior to judgment does section 236 [of the New York Domestic Relations Law] create any contingent or present vested interests, legal or equitable, by virtue of the parties' marital status or prior to a judgment dissolving their union." (internal quotation marks and original alterations omitted)).

---

[4] The Answer fails to respond to paragraph 17 of the Complaint. (*See* A.P. Doc. I.D. No. 10.) However, it appears that the Debtor may have transposed the paragraph numbers and the response to paragraph 16 of the Answer was intended to apply to paragraph 17 of the Complaint. (*See id.*)  In any event, that appears to be mere inadvertence and the court will not bind the Debtor to what otherwise might be a deemed admission.

[5] At the Trial (as defined below), counsel for the Debtor clarified that the Affirmative Defense was an allusion to the Debtor's possible ability to exempt her interest in the Property as "alimony" under Bankruptcy Code § 522(d)(10)(D). (*See* Oral Record (as defined below) at 3:19:54 *et seq.*)

[6] References to the oral record of the Trial appear in the following form: "Oral Record at ___."

[7] References to those exhibits appear in the following form: "Exhibit __."

[8] All of the above-referenced judicial admissions are hereafter referred collectively to as the "Judicial Admissions."

      2. Does the court have the discretion to relieve a party from improvidently made judicial admissions in appropriate circumstances? *Cf. L.P. Larson, Jr., Co. v. Wm. Wrigley, Jr. Co.,* 253 F. 914, 917 (7th Cir. 1918); *Electric Mobility Corp. v. Bourns Sensors/Controls, Inc.,* 87 F.Supp. 2d 394, 406-07 (D.N.J. 2000); *Feinman v. A.H. Bull S.S. Co.,* 107 F.Supp. 153, 155 (E.D. Pa. 1952), *aff'd,* 216 F.2d 393 (3d Cir. 1954).

      3. Assuming (but not deciding) that the answer to question #1 is "no," and the answer to question #2 is "yes," is it appropriate here for the court to relieve the . . . [Debtor] from the contrary Judicial Admissions?

(A.P. Doc. I.D. No. 47 at 3.) The parties have complied with that order and the matter is ripe for the within disposition.

## II.  FACTS

The Dissolution Proceeding was commenced some time in 2005 (but prior to the commencement of this case). As noted above, this case was commenced on October 13, 2005 and, in her Schedules (filed on the petition date), the Debtor did not list any interest in the Property. As noted above, the Meeting was held on November 7, 2005. At the Meeting, the Trustee examined the Debtor under oath and, during the course of that questioning, the Debtor disclosed (a) that the Property was then her residence and (b) that the Property was owned by her husband. (*See* Oral Record at 2:54:00 *et seq.*) The Debtor reiterated the pendency of the Dissolution Proceeding and the Trustee asked the Debtor's counsel to forward to the Trustee the "financial affidavits" that had been filed by the parties in the Dissolution Proceeding. The Debtor's "Financial Affidavit" was not filed in the Dissolution Proceeding until on or about June 1, 2006.[9] (*See* Exhibit A (the "Financial

---

      [9] The Debtor had erroneously advised the Trustee at the Meeting that financial affidavits had been filed before the Meeting. (*See* Oral Record at 2:55:14 *et seq.*)

Affidavit").) On the Financial Affidavit, the Debtor listed the Property as her real estate asset encumbered by a mortgage (the "Initial Mortgage") in the unpaid amount of $151,350.00. (*See id.*)[10]

In January of 2007, the Trustee checked the Connecticut judicial website and learned for the first time that the Separation Agreement had been entered into of record in the Dissolution Proceeding in June of 2006. The Trustee contacted the Debtor's counsel and requested a copy of the Separation Agreement (and of the Financial Affidavit). The Trustee received both in February of 2007. (*See* Oral Record at 2:55:53 *et seq.*)

The Separation Agreement provides in relevant part as follows:

> 11. **Alimony:** The plaintiff husband shall pay to the defendant wife the sum of $700.00 per week as alimony commencing June 1, 2006. Said alimony shall be payable for a period of twelve (12) years. Neither the amount nor duration (term) shall be modifiable except as provided herein. Said alimony shall terminate upon the death of either party, or the remarriage of the defendant wife, whichever event occurs first. For so long as the plaintiff has an obligation to pay the mortgage (13a), it shall be further understood and agreed that if the defendant is late or fails to pay such mortgage or tax obligation which the defendant undertakes pursuant to Paragraph 13a the plaintiff shall have the right to direct any alimony to the mortgagee so as to maintain his credit standing.
> . . .
> 13.(a) **Real Estate:** The plaintiff husband shall quit-claim all his right, title and interest in and to the marital home located at 10 Seminole Road, Middlefield, Connecticut to the defendant wife who shall indemnify and hold him harmless with respect to the mortgage, taxes, insurance and maintenance thereon. The defendant to refinance the mortgage on the premises within three (3) years from the date of dissolution.
>
> 13.(b) **Husband's Businesses:** The defendant waives any and all right she may have to claim an interest in any business with which the plaintiff is associated, regardless of whether or not the plaintiff has a current interest of record. Accordingly the defendant waives any interest in and to all assets of the plaintiff on his financial affidavit and to any enterprise which he may be engaged in which he

---

[10] The Financial Affidavit listed the Property with a "?" value and having "?" equity. (*See id.*)

has not become formerly a part of as of this date including but not limited to any future business endeavors using the name Wood N Tape, Agave or Vaughan's.

. . .

26. **Bankruptcy:** Each party recognizes and agrees that this Agreement has been negotiated in its entirety and the provisions relating to child support, alimony (or waiver thereof), the transfer of assets and apportionment of certain obligations are all interrelated with the goal of arriving at an equitable level of support and/or distribution of assets. Accordingly, it is hereby expressly agreed that, notwithstanding the labels of any particular paragraph hereof, all of the obligations created by this Agreement are in the nature of support and therefore shall not be dischargeable by either party . . . in the event of a bankruptcy filing.

. . .

29. **Financial Affidavits:** The financial affidavit of the plaintiff husband dated June 1, 2006 and the financial affidavit of the defendant wife dated June 1, 2006, are hereby incorporated and made a part of this agreement, it being expressly understood that the terms of this agreement and the financial arrangement hereunder were made upon the representations contained in said affidavits. It is further understood and agreed that the parties hereto relied upon said representations in executing this agreement . . . .

(Exhibit C.)[11]

After acquiring title to the Property pursuant to the Decree, the Debtor refinanced the Initial Mortgage (which was solely in Kenneth McAvoy's name) by taking out a new mortgage (the "Postpetition Mortgage") in a greater amount solely in her own name.[12] None of the proceeds of the Postpetition Mortgage were paid to the Trustee nor was he advised of the transaction. (*See* Oral Record at 2:59:27 *et seq.*)

---

[11] The actual decree (the "Decree") rendered in the Dissolution Proceeding is not of record. For present purposes, the court assumes that the Decree is consistent with the Separation Agreement (at least in relevant part).

[12] On March 20, 2009, Deutsche Bank National Trust Company filed a motion for relief from stay with respect to the Postpetition Mortgage. (*See* Case Doc. I.D. No. 36, the "R/S Motion".) That motion avers that the Postpetition Mortgage is dated November 22, 2006 and was in the original principal amount of $225,000.00. The motion also avers that the Postpetition Mortgage has been in default since May 1, 2008. (*See id.*)

Some time after the Trustee received a copy of the Separation Agreement and the Financial Affidavit, the Trustee made a demand that the Debtor quitclaim her interest in the Property to the estate; the Debtor refused to do so. (*See* Oral Record at 3:00:12 *et seq.*) At around the same time, the Trustee filed an affidavit of claim of interest on the relevant land records asserting the estate's alleged claim to the Property. (*See id.* at 3:02:51 *et seq.*)

In the Spring of 2008, the Trustee learned that the Debtor had listed the Property for sale. A potential buyer was identified and a closing was scheduled. The Trustee indicated that he would be willing to release the estate's claimed interest in the Property if all the equity from the proposed sale (the "Proposed Sale") was paid to the estate. However, the Trustee had no confidence as to the correctness of the proposed closing statement (*i.e.,* the actual amount of equity) and, accordingly, he would not release the estate's claimed interest in the Property.[13] The Debtor's counsel offered to have the Proposed Sale close "in escrow" but, after consultation with his special counsel, the Trustee would not agree to such a closing. The Proposed Sale did not close. (*See* Oral Record at 3:03:28 *et seq.*) As of the Trial, the Property was vacant. (*See* Oral Record at 3:00:36 *et seq.)* As noted above, the R/S Motion was filed after the Trial.

### III. ANALYSIS

#### A. Applicable Law

##### 1. Bankruptcy Code § 541

In relevant part, Bankruptcy Code § 541(a) defines "property of the estate" to include:

---

[13] The Trustee ultimately came to believe that the equity which would have been realized from the Proposed Sale was in the $30,000 to $35,000 range. (*See* Oral Record at 3:06:31 *et seq.*)

 (1)  [A]ll legal or equitable interests of the debtor in property as of the commencement of the case.

. . .

 (5)  Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date–

  (A) by bequest, devise, or inheritance;

  (B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or

  (C) as a beneficiary of a life insurance policy or of a death benefit plan.

 (6)  Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case . . . .

11 U.S.C.A. § 541(a) (West 2005).  Property interests are defined using applicable nonbankruptcy (here Connecticut state) law.  *See Butner v. United States,* 440 U.S. 48, 55 (1979).

Property not included in the estate pursuant to Bankruptcy Code § 541(a)(5) may be included in the estate pursuant to Section 541(a)(6) (provided that such section otherwise is applicable).  *Cf. Hicks v. Turchin (In re No. 1 Con-Struct Corp.),* 88 B.R. 452, 453 (Bankr. S.D. Fla. 1988).[14]  "Congress intended . . . [Section 541(a)(6)] to be quite broad, not limited to the definition of 'proceeds' set forth in the Uniform Commercial Code, but encompassing any conversion in the form of property of the estate, and anything of value generated by property of the estate." *McLain v. Newhouse (In re McLain),* 516 F.3d 301, 312 (5th Cir. 2008) (internal quotation marks and citation omitted).

---

  [14] The court finds the Debtor's argument to the contrary to be unpersuasive. For present purposes only, the court assumes (but does not decide) that Section 541(a)(5) would not apply to the Property. The Trustee has reserved his rights on that issue. The issue of whether the Decree transferred title to the Property as alimony (rather than a property settlement) is not yet ripe.

### 2. Connecticut Law

Under Connecticut law, "[n]either husband nor wife shall acquire by the marriage any right to or interest in any property held by the other before or acquired after such marriage . . . ." Conn. Gen. Stat. Ann. § 46b-36 (West 2009). Moreover, the mere commencement of a dissolution action does not create a legal or equitable interest in either spouse with respect to the other spouse's property. *See* Conn. Gen. Stat. Ann. § 46b-81(a) (West 2009) ("*At the time* of entering a decree . . . dissolving a marriage . . . , the superior court may assign to either the husband or wife all or any part of the estate of the other." (emphasis added)). *Cf. Musso, supra* (same result under New York law).[15]

### B. Application of Law to Fact

The court declines to relieve the Debtor from the Judicial Admissions (except to the limited extent set forth above). The Judicial Admissions are consistent with the Financial Affidavit. They do not appear to be inadvertent and, in any event, the Debtor should not be permitted to "flip flop" her positions in this court and the Superior Court as her interests appear to dictate from time to time.

However, the foregoing discussion does not advance these proceedings much. All the Debtor has admitted is that, prepetition, she had some undefined equitable and/or ownership interest in the Property for some unexplained reason, and with no explanation as to how such interest relates to the Decree. If the Debtor had a prepetition interest in the Property pursuant to Connecticut matrimonial law (which, as discussed above, she does not), the present record might be sufficient for the court to conclude that the interest in the Property assigned to the Debtor by the Decree was within the purview of Section 541(a)(6). However, given the undefined and unexplained nature of the Debtor's

---

[15] The Trustee all but concedes the point. (*See* A.P. Doc. I.D. No. 50 at 1.)

prepetition interest in the Property, the record as it now stands is insufficient to support such a conclusion.

Again, the foregoing discussion does not advance these proceedings much. It leaves the Trustee with an interest that he is unable to determine whether it is worth administering (or even can be administered), and it leaves the Debtor with a cloud on her title. Accordingly, the court will exercise its discretion to reopen these proceedings to allow the parties to more fully develop the record (including with respect to the applicability of Section 541(a)(5) and the "alimony" issue).

### III. CONCLUSION

For the reasons discussed above, the Trustee is directed to submit and serve a proposed further amended pre-trial order. If the Trustee has not done so on or before May 13, 2009, this adversary proceeding will be dismissed without further notice or hearing. It is **SO ORDERED.**

Dated: April 27, 2009                                                BY THE COURT

*Lorraine Murphy Weil*
Lorraine Murphy Weil
United States Bankruptcy Judge